May it please the Court, Vance Witte for Appellant, Ironshore Specialty Insurance Company. In this case, the District Court abused its discretion in dismissing the declaratory judgment action. The Court's order suffered from three analytical flaws. First, it failed to recognize that the McGowan v. Tractor Supply litigation in state court did not constitute a parallel litigation with the present case, since it did not involve the same parties in issues. Second, the Court failed to recognize that the rulings in the coverage case would have no effect on the state court personal injury action, and vice versa. Hence, the declaratory judgment action would not create any unfair advantage for any party in either of the cases. Third, the Court's order misanalyzed the judicial economy factor by focusing entirely on the possibility that the state court appeal could moot the coverage dispute, which of course is true, but it also ignores... Mr. Dale, what's the status of the state court of appeal? The appellant's brief has been filed. The appellee's brief has not been filed, so they're still in the briefing phase. Do we know the timing? Is it imminent? I do not know when an appellee's brief is due. There have been some extensions in that case related to appellate mediation, which occurred, and that appeal seems to me to be moving at a fairly glacial speed through the Waco Court of Appeals, but I can't provide any greater detail to that. We're not a party to that appeal. Is the mediation still ongoing? A mediation session has been completed. I'm not sure whether they have any anticipation of further mediation in that matter. But that case could moot this, moot the issue. It's possible. It could moot the issue. If the case is reversed and judgment is rendered in favor of tractor supply, then there would be no judgment. There would be nothing for these insurance companies to be fighting over. That's perfectly true. It's also true that the judgment could be affirmed, in which case the controversy would be quite lively, and it's possible that for some reason there could be remanded for further proceedings in the court. Then again, the issues between the insurance companies would still be alive at that particular time too. So we don't know what the outcome will be. It's possible that it could be mooted. But the key determination, as far as judicial economy goes, is what the status of the declaratory judgment action was at the time that it was dismissed. It wasn't dismissed early on, immediately after being filed on the basis of this pending appeal. It was only dismissed at a point in time after the parties to the declaratory judgment action  and had fully briefed on motion, cross motions for summary judgment, all of the coverage actions. But there's not discovery, though, right? It's just stipulated facts. That's correct. The facts are basically agreed to between the parties with respect to the underlying coverage. So you were just waiting for a ruling on the sub-judgment? That's correct. Everything was teed up, and the only thing we were waiting for was a ruling. So the only amount of judicial economy that would exist with respect to the dismissal of the case is just the effort of the court in making the ruling and writing the order. As far as the parties are concerned, there's no judicial economy whatsoever. They've already done all the work to litigate the coverage dispute between them. I'm sorry. No, no, you're answering Judge Clement's question. Go ahead. Did you have anything else to answer? No, as far as the parties are concerned, there's a waste of judicial resources because if it is necessary to have a declaratory judgment action or some kind of coverage litigation after the appeal is determined, then the parties will be back at square one. Presumably they could reuse a lot of their work, but they would be back at the beginning of a case in whatever court that the subsequent declaratory judgment action is filed in. So could it go to either state or federal court? It could, Your Honor. The parties are diverse. So if it were filed in state court, there's a possibility of removal. Okay. Can you help me then? What if the declaratory judgment act case included a determination that they were, in fact, an employee, but the court of appeals in Texas said no? So then why isn't there some sort of conflict that's going to cause a problem? Well, it's whether they are an employee under the policy is one issue. Whether they are an employee subject to the exclusive remedy defense is another issue. One is based on what the language of the contract of insurance between Safety National and Tractor Supply says. The other is what state law would consider to be an employment relation. And it's not even the employment relation so much as whether or not the Tractor Supply would be entitled to rely upon the exclusive remedy defense in its personal injury action. Right, but there are two steps to the policy, and the first step of the policy could be ruled in two different ways, one by the state court and one by the federal court on the summary judgment. And then I'm asking what happens if that result. Am I wrong on that? I can be wrong. I suppose there's a possibility. Yes, the state court reverses. But the federal court upholds that the person is an employee under the policy, which would mean that they have to get to step one, which is the same step that the state court is having to rule on. And why is that a problem? Well, if the state court reverses and renders, then we have nothing to talk about. Right, well, I guess you don't have any problem at that point. But they would be on the hook during the pending time and then ultimately. Well, that would be correct, I suppose. Now, if the court determined that they were an employee and ruled in favor of that, in favor of Ironshore and really would be supporting the Tractor Supply's coverage as far as the safety national policy goes, and then there was a contrary ruling from the court of appeals that he was an employee and was subject to the exclusive remedy defense, then the case becomes mooted. So it's difficult to see how a conflict would arise in that case. And although that there would be some similarities in the evidence that would be considered with respect to the employment status under the policy as opposed to employment status under state law for the purposes of applying that defense, they are two distinct legal standards. And obviously nothing that the declaratory judgment action would determine would be binding upon the litigants in that state court case. In any event, McGowan, the underlying plaintiff, nothing that Judge Smith would decide the declaratory judgment would be binding on him. He's not a party to that suit. Both of you all cite a lot of different cases, but I can't find that there's a case that says that the appeal was, I mean, that the declaratory judgment was ripe whenever there's an appeal or one that says it's not ripe. I can't find a case going either way on the precise question. Is there a case that says that it's ripe while it's on appeal or is there a case that says it's not? All the cases tend to deal with cases that are not appealed or cases that are settled. Yes, Your Honor. Certainly we, I'm sure both parties, look diligently for a case that would determine that precise question. Now I think that one has to distinguish between justiciability and ripeness as a matter of federal law in Article III and whether there's an actual controversy under the Declaratory Judgment Act. But is there a case going either way? Well, the Allendale case from the Tenth Circuit, which we cite on that point, is a case which says that we agree that for the purposes of federal law and the Declaratory Judgment Act and Article III, the fact that the case is on appeal doesn't mean that it's not sufficiently ripe for declaratory judgment action. Of course, that's consistent with Maryland casualty and the whole drift of federal law on that subject, the fact that there's a contingent possibility that some subsequent event might cause the indemnity obligation to be removed doesn't mean that you don't have a justiciable controversy. Now there's a separate issue under state law, which I think the Safety National is trying to raise, although it tends to muddle the two issues together, and that state law issue is would Texas law recognize an ability to seek a declaratory judgment on an indemnity obligation at the point in time where a judgment has been entered but the case is on appeal? And they cite, of course, a lot of litigation indicating that the case should be concluded or that the litigation be completed in order for there to be an ability to raise this action under state law, and that is where we don't have any authority which tells the court what to do if the case has reached final judgment but the appellate process is still ongoing. So the court is in the position there of making an eerie guess as to what the Texas courts would decide under that circumstance, and we believe there's very strong indications that the court would determine that the case was justiciable. First of all, a judgment is regarded as final for race judicato or any kind of preclusion purposes even though it's under appeal so long as the final judgment has been rendered in the trial court. That's the Scurlock v. Smithwick case. We know that the judgment ripens the indemnity obligation. That's what creates the obligation to indemnify. That's the Wilbrus case from this court. Can I just? I want to cabin off the federal part of this case. Okay. So the only case that you have, the case you have is Allendale, and you believe it stands squarely for the proposition that it's appropriate and ready once it's on appeal, right? Is that your position? Correct. And there is no case to the contrary? Well, there's the case that Allendale disapproved of, the previous Tenth Circuit case, which is a contrary case. Right, but no case in any circuit that goes the other way? Not that I'm aware of, Your Honor. Okay, and so then we get to the state part, and that's what you're talking about now. Right. How do you distinguish the Griffin case? The Griffin case is a case that says ordinarily you don't reach indemnity until you have a determination of the case, whether by judgment or settlement. We have a judgment. The Griffin case creates an exception to that general rule, which says that you don't have to wait for a judgment if the same rationale that would disprove a duty to defend would also disprove a duty to indemnify. So it creates an exception to the requirement that there be a judgment or settlement for a particular category of cases. Now, that particular exception has no bearing in this case, but the key thing is that, first of all, that Griffin does not have the requirement that the litigation be concluded as an inflexible requirement. Griffin itself created an exception to that rule, and it doesn't obviously talk at all about a situation where the underlying case is on appeal. Now, with regard to making the guess as to how the Texas Supreme Court would rule on the subject if it came before it, I've talked about the res judicata effects of a final judgment. I've talked about that that is what ripens the indemnity obligation. There are other important clues, too. First of all, a plaintiff who is raising a Stowers action that has been subject to a judgment beyond the limits of the policy as a result of the negligence of the insurer can bring that action even while the underlying case is on appeal. There's no requirement that they await the outcome of the appeal, even though that could obviously moot that action. That's the Street case, which we saw in the reply brief. Also, a judgment creditor is allowed to proceed against a liability insurer even if that judgment remains on appeal, and that's the Gulf insurance case. So all of these strands of state law taken, woven together, strongly indicate that when the courts say that the litigation must be concluded by judgment or settlement, they don't mean that the judgment's attackability has to be finally determined as the outcome of the appeal. It's still a final judgment. It is still a final judgment. It declares there is an absolute decree in this case which says that the underlying defendant, tractor supply, has got to pay McGowan $8 million. You don't want us to rule in the state way, though. Even though you think you win on state, you don't want us to rule in the state way because you believe that the federal law controls. Correct? Well, that's correct, Your Honor. Now, the court has determined that it's sort of eerie bound in this situation not to declare the rights of the parties where a state court would not allow it, even though arguably this is a procedural and not a substantive. But I'm not here to relitigate that issue. We take that as something we have to live with. But, you know, it's our position certainly that under federal law there's full justiciability here. It's a big deal to find a court abused its discretion as it should be. Yes, Your Honor. This is not a micromanagement situation. I would agree that if there were factors going in all kinds of different directions that the judge had to weigh that this court should not find an abuse of discretion in those kind of situations. It's an exceptional case where, as here, there are literally no factors which favor the denial of jurisdiction. Did the judge go over the factors, the seven throw-hole factors? Didn't he analyze those and say in his ruling that he reviewed those seven factors? He lists out the seven factors. He's certainly conscious of them. His application section of his order, it's very short. It's one paragraph of the entire order. And he does not specifically trace out each of those elements. He certainly talks about several of them. He talks about judicial economy. He talks about potential unfair advantage on the part of Ironshore in raising it. But he doesn't specifically say here's one and here's what I decide, here's two and here's what I decide about that. You're not saying that's what needs to be done, though. A court can generally say the factors and then give a kind of conclusory thing. That's okay. Yeah, I may complain it's not the way he drafted the order. It's that none of the factors support the denial of jurisdiction in this case. All right, thank you, sir. You have some rebuttal. Mr. Howder. Mr. Howder. May it please the Court, Bernie Howder for Safety National Insurance Company. The district court properly dismissed this case, I think, for reasons in addition to one that he did not address specifically or did not find specifically. In Oreck's credit, this court set forth three things the court must look at in deciding whether or not to decide or a district court should decide a declaratory judgment action. The first one is justiciability. The second one is authority. And the third one is the discretion. Under discretion, those come as those seven Trujillo factors. But the first and probably the most important factor, because it not only questions this court's jurisdiction, it also questions the trial court or the district court's jurisdiction, and that is whether this is right, whether there's justiciability. And the Supreme Court as recently as 2007 has basically said it hasn't really given us a real good indication of when a case is or there's a case of controversy in the Medellin v. Genentech case. The case that all of the justiciability and ripeness issue goes back to is the Supreme Court's decision in Maryland Casualty. And in that case, the court said the test for ripeness in the declaratory judgment action is whether the facts under all the circumstances show there's a substantial controversy of sufficient immediacy and reality to warrant declaratory judgment. And Oreck said that this court addressed that and said the specific whether or not the facts in a case create a sufficient immediacy is evaluated on a case-by-case basis. If you look at the cases that talk about the sufficient immediacy, I think one of the cases that both parties cited is the Allendale case. And the Allendale case pointed out that in the Maryland Casualty case, which is the Supreme Court decision, there was a sufficient immediacy there. And that sufficient immediacy in that case is you had a state court versus a federal court coming out with different interpretations of the policy. So they said that there was sufficient immediacy for the court to act. In the Allendale court or in the Allendale case, there was a statute of limitations that was going to expire if the court did not or when the court dismissed it, it basically created a statute of limitations problem for the litigant. And the Allendale case said that there was sufficient immediacy in that case. And it distinguished its holding and it did not in any way dispute or refute or retract its holding in its earlier decision in Grimshaw, but it pointed out that in Grimshaw there was no sufficient immediacy. But in the Allendale case there was because in that case the dismissal created a statute of limitations problem. So they said that statute of limitations problem created a sufficient immediacy for the court to issue the need for an immediate decision. Interestingly, Judge Aradu asked, the court did in Allendale talk about the sufficient immediacy and the problem. And in addressing the problem, it's interesting, the court said, we recognize of course that in a case such as the one before us, the district court will normally abate the proceeding until the state supreme court determines the appeal. So in the Allendale case, the court did find that a court can abate the proceeding and doesn't have to address the proceeding until the judgment is final. And that judgment included an appeal. But abate doesn't mean dismiss. Excuse me? Abate doesn't mean dismiss. Well, actually this court has held that a court can abate or can dismiss. And in that case — Right, but in this case it doesn't matter because there is no statute of limitations problem. In the Allendale case there was, and that's why dismissal meant something different than abatement. In our case there is no difference. The court either dismisses or abates it. And in the Allstate Insurance Company v. Employers Liability, this court held that it was discretionary for the court to either abate or dismiss the lawsuit. How about rule on the summary judgment motions? Excuse me? How about just rule on the summary judgment motions? Well, if the court does that, then it has to determine, then, that the issue is ripe. And as this court — and there's no sufficient immediacy. Well, no more facts are going to be found. The facts are found by the trial court. Well, there's still some issues as to whether or not — there's some issues that have come to light as to whether there could be some discovery on the insured's interpretation of the policy. It's a little late in coming to light now, isn't it? Excuse me? It's a little late to — Well, it isn't now because the case has been dismissed. But it would have been — you're correct. It would have been in — Was that briefed in the summary judgment motions? No, it was not. No. No. A little late. Right. Now it is late. But since the dismissal, that has come to light, and it came to light in the mediation that was held. Which is over, right? Right. The mediation was held in the underlying case. So do you have a case that says that the case is not ripe while it's on appeal? Do you have a case that holds that anywhere in America? No. But all of the cases, if you look at all of this court's cases, in those underlying cases, the case has either been settled or finally resolved. It's never been addressed. That's my question. It seemed that all of them were settled or resolved. But was there a case either way? And your opponent says, well, Allendale is a case that supports his interpretation. So I wanted to give you that opportunity. Well, Allendale actually supports our interpretation, and that is there should be no issue. The court specifically said that it recognized that a court can abate, not decide the issue, until the court of appeals, the state court of appeals, has finally decided the issue. In that case, that case had already been decided by the trial court. There was a judgment, and it was on appeal in the Allendale. The court specifically said that the court could have, the federal court could have abated the decision. In this case, it's not going to matter whether it abates it or dismisses it, because, again, we have no problem that's created either through statute of limitations or some type of issue on the abatement versus dismissal. So whether the federal court, whether Judge Smith dismissed it or abated it, is really not an issue in this case because there's no, this court has said that the court has that discretion, the trial court has that discretion. Well, if you lose the appeal and the case is dismissed, it has to be reinstituted, and that's expensive. So why not just rule in the summary judgment motions rather than dismissing? It seems harsh. Well, then what this court is saying is the court should have abated the decision, abated the appeal as opposed to dismissed it. And the decision to abate or appeal or the decision to dismiss or abate is different from what Ironshore is asking for. Ironshore has never complained about it. We could remand and instruct the district court to abate. Correct. Yes, and that would be sufficient. I mean, the effect is going to be the same thing, and that is because there's no sufficient immediacy here for a decision. Again, that tests this court's jurisdiction and that court's jurisdiction. And that court will have jurisdiction once the issue of whether or not this employee was a common law employee, which is, as Judge Seward pointed out, is one of the tests under the policy. In order for that policy to apply, and I'm not saying it's the only part of the provision, but the first part of the policy provision is that this employee must be determined by a court or an arbitration panel in this point of court. Is that one of the issues before the court on summary judgment? Before this court? Yes, it is, Your Honor. Yeah. But it's also an issue that's in the state court. Right. And if the state court decides it, then it would be in conflict with the federal court's decision. Right. And the state court has more of the facts before it. It has all the facts before it. It heard all of the facts, and it decided that this employee was an employee of job length. Implicitly, there's no direct finding of that, but implicitly it found that. Your argument to wait has some intuitive appeal, but it seems to me that if you look at the Texas cases where they're using the term judgment over and over again, and final judgment means district court decision. So why isn't the final judgment by the district court good enough? I think the courts also use the issue. They use the words, and I've looked through these cases, and they all use the case either resolved, concluded, that final judgment is entered, but there's cases that say that until the decision is or there's a final decision or the underlying lawsuit is resolved. In indemnity cases or indemnity issues, the issue of indemnity doesn't come ripe until the issue in the underlying case is finally resolved. Griffin itself says before a judgment has been rendered against an insured. Excuse me? Griffin itself uses the language before a judgment has been rendered against an insured. And so it says there was no justiciable controversy before a judgment has been rendered against an insured. Right. And there isn't a judgment. In this case, there is a judgment rendered. But if the court takes that position, then you just basically say, well, then we're not looking at the sum. You're looking basically at the formal part and not what the substance is. What's the substance behind that rule? And that's to prevent what? A court from issuing advisory opinions. There's no sufficient reason here. There's no reason the insured has not even raised the issue that it can't file an appeal. The insured has not said that there's a problem here. The insured is the one that should be in here saying, if anything, if there was a sufficient immediacy, that it needed this issue decided because if the Court of Appeals affirms, then it needs a coverage issue decided. Is there really a problem with the conflict as a practical matter? We went over this with the opposing counsel. If there is a conflict, then the coverage never – Either way, it doesn't seem that it ultimately harms your client. Well, if the Court of Appeals – you're saying if the district court says that he's a common law employee and there's coverage, but then the Court of Appeals or the Supreme Court of Texas, you're right, that is correct, John, it would not make a difference. But again, then, you have perhaps for a different time, when this issue is not decided, you have a case out there now that says that, even though that issue was decided by the state court, to the opposite. That would be the only – And it could be several more years. Correct. Or is there a harm to waiting the several more years? None that has been expressed to the court, none that is required under the sufficient immediacy. There's been no reason why the district court has to come to a decision. There's just no reason until the Court of Appeals or the Supreme Court decides the underlying lawsuit. Well, no one's paying the judgment until it comes to a decision. Excuse me? No one's paying the judgment until it comes to a decision. Correct. So that's pretty – that's important to someone, not you, maybe. Well, it obviously isn't important to the insured either, because you don't see the insured here. All that's important to is another insurance company that knows that it has to pay the judgment. Right. So it will be then, once that decision is made by the Court of Appeals or the Supreme Court, then whether or not they address that issue. And that's the other thing is there's a chance that the court couldn't or wouldn't have to address that issue at the Supreme Court level or the Court of Appeals level. There's a – and I don't want to get into this, but I've been told by Judge Phillips that there's a way that the court could basically say, because the statute's been changed, we don't need to address that issue. And the statute being the statute concerning whether or not at least an employee is an employee of a borrowed employer. And that's been changed by the statute. So the court might not address the issue. It's accruing interest, I guess. Yes. And that's – I was trying to think of what the harm, if there's coverage. Well, again, there is no harm to the insured that the insured is here complaining about. The insured had every – the insured was a party to this lawsuit. So if your client has to cover it, you're willing to take the risk that it's going to have to cover it in a more expensive amount. Exactly. They are taking that – they are making that decision based upon the language of their policy and the reason they issued the policy. I think once you get past – and I'm going to just briefly address the other issues, and those being the seven factors, I think the court did – the lower court did address each of those issues. It set it out. And I know it's only a paragraph long, but in fairness to the judge, the whole discussion portion of the decision is only four paragraphs, four or five paragraphs. So whether or not – and I don't know – I've been – I won't find any case by this court that said the district court must set out in specific detail each of these seven factors and why each of the seven factors and what facts it finds to support each of the seven factors. I think this court has said that there has to be a – this court has to feel that a clear need exists to reverse this court. And you have to find a clear finding that the trial court abused its discretion, the district court abused its discretion. I don't think there's a finding here of that. I think the court did set out all the facts that the parties had stipulated to and then set forth why it found that each of the seven factors – or not each of them, but the seven factors militated. I don't think that the court has to – the district court has to find each of the seven militates it in favor of one way or the other. Well, which factors favor your client? Well, I think if we go through them – one second. I'll pull up those seven factors. First of all, I think there were – let me see. The third factor, no form shopping, and the convenient form, the fifth one, were both – there's no argument that they were. So we just have the five really to consider. The first one we believe does militate or favor us. That is that there is an issue, the common law employee issue, that will be decided at the state court level. And necessarily was decided by the court's granting of a summary – or denial of a summary judgment. The trial court denied the summary judgment, finding that he was an employee of Tractor Supply and basically implicitly held that he was an employee of JobLink and holding that the exclusive remedy provision didn't apply. So I think the first one does factor or does favor us. The second one, the court found that Ironshore filed a suit and attempted to foreclose a determination of whether McCowan was an employee. That was the issue that – it was the court's opinion that Ironshore was basically trying to sidestep that issue of the trial court had decided that he wasn't an employee of Tractor Supply. And that's what the court said, that it filed a suit in an attempt to foreclose the determination. So you agree with the district court that that favors you? Yes, I do. And the possible inequities in allowing Ironshore to gain precedence under the fourth factor, the court again found that that favored – allowing Ironshore to move forward on this would raise possible inequities. So the fourth factor the court did find, and we agree that it does favor us. Again, the judicial economy is one that the court – I mean, yes, all the facts were there. Yes, we did enter into stipulations. Unfortunately, we did that because of the short time period between what the court said and the discovery order. And so the parties, rather than conducting the discovery, entered into the stipulations, and the court does have the stipulations. But the court – you know, you still have the judicial economy of the court having to take the time to go through and ferret through the evidence and figure out which of the cases and which of the things do determine liability. So there is some judicial economy in the court saying, wait a minute, why do I need to go through this exercise? Why do I need to parse through all of these different facts? Why do I need to look through this policy? Why do I need to make insurance law and make some decisions on insurance? When all of this could be mooted with a stroke of a pen. The Supreme Court of the Court of Appeals in Waco could basically say this was a common law employee  But what do we do with our Agora case that says that judicial economy weighed against dismissal when there are no factual disputes between the parties and they briefed the insurance issues? Well, again, it gets back to do I disagree with that? I mean, that's what the court said. I think in my – I'd have to pull my brief, but I think I addressed the Agora decision in my reply brief. But standing here today, Judge, I can't – I don't know that there is any factual issues other than the one that I've raised that may have the liability. So is judicial economy a wash then in your mind, even though the district court found it in your favor? Well, other than the court having to go through what I just said, that at least is judicial economy so the court doesn't have to do that. I mean, I know the parties don't have to do anything, but now the court doesn't have to do anything. The court doesn't have to waste its time deciding this issue. I mean, again, that's to say that the judicial economy takes nothing into the judicial side and it's all the party's side. So, yes, I think it still does weigh in our favor because the court doesn't have to do anything. The court doesn't have to spend its time parsing through the facts, parsing through the record, going to the – looking up the law and determining this issue of law if it's not been decided. And we've not been able to find any cases. There are some very contentious positions in the law in this area. What about seven? State judicial decree. Excuse me? The seventh factor. We didn't get to this. Did you cover the seventh factor and I missed it? No. State judicial decree. Well, I think the court did in that one, and I think it gets back to whether or not the states, and I'm not sure exactly – it's funny I had seven and I didn't write down what my seventh one was. Whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court pending before him the parallel state suit between the same parties is pending. Right. And I think that doesn't – that is a non-factor. Non-factor. Right. I don't think that that militates either way. I mean, there are some state issues, but I don't think they're between the same parties. But, you know, so I don't really think that favored us at all. And I don't know if it favored anybody. I know there's no – they weren't the same parties in the state court. We weren't in the state court, and Iron Trail wasn't in the state court. So neither one of us were involved in the state court. All right. Thank you, Your Honor. Thank you. Thank you. The first Trejo factor is, is there pending state court litigations where the matters in the declaratory judgment action may be fully litigated? That's the overlap question. And clearly in this case, the coverage issue is not going to be determined at all in the underlying state court action. Even if there were some factual overlap, it doesn't meet the Trejo requirements as set forth there. This court has said in the Sherwin-Williams case that the absence of parallel litigation in state court is a factor that weighs strongly against the dismissal of the declaratory judgment action, and that is exactly the situation we have here. Agora also strongly indicates that that is, if not a determinative factor, at least a very powerful one when we're weighing up these seven particular factors. As far as the only other factor found by the court aside from judicial economy, which has been carefully addressed by both parties here, is whether or not that somehow Ironshore is gaining some kind of unfair advantage or gaining some sort of precedence in the underlying state court litigation as a result of its declaratory judgment action or how it changes the ground rules there. And the answer is no. Ironshore is not a party to that underlying state court personal injury litigation. It doesn't gain any advantage in any other forum as a result of the declaratory judgment occurring here. So to the extent that the district court relied upon that here, it was clearly a misapplication of the factors. So it's Ironshore's strong contention that none of those factors militate in favor of a dismissal here. Now, as far as justiciability goes, I think it's first important to realize that the district court did not base its ruling on justiciability. Impliably, it must have determined that the case was justiciable because it goes straight into its discretionary factors, which it could not have gotten to had it not determined that it was a justiciable controversy. Certainly, of course, this court must take cognizance of jurisdictional issues on its own. I understand that. But this is not a situation where that can be stated as an additional reason that the court's exercise of discretion was correct. The possibility of an abatement of the action pending was raised. I think there are two important things to realize there. First of all, from our point of view, an abatement would be superior to a dismissal in that we could, at the end of the state court litigation, we could go right back to where we were at that stage of the proceedings of the declaratory judgment. It would not be as ideal as going ahead and getting the declaration now, but it would certainly be better than a dismissal where we had to start all over again, perhaps even in another forum. How is it not as ideal? What do you get out of getting the determination now that you wouldn't have by getting the determination at the proper time when you need it? Because when the case is on appeal, it would be useful for everybody, the insurers and the insureds, to know what insurers were responsible for potentially paying the judgment. We all have duties. You want to get it settled. You think it would help settlement. It would help in the settlement discussions and to make sure that we all fulfilled our duties to the insured. Mediation has occurred and has not resolved the case. Perhaps if there had been… Well, they still have those same duties right now. I mean, the potential for them. Well, Safety National takes the position that it has no possible coverage for the case at all. It doesn't. And perhaps when it's sitting there in mediation, it would have an entirely different viewpoint if there had been a federal declaration that says, oh, yes, you do. And so that was a very important thing, and that's why a lot of courts have said that it's a very beneficial thing for all parties involved for the declaratory judgment to take effect while the case remains pending. But do you concur that Allendale itself says that unless there's some important urgency that abatement is the normal method? Well, Allendale says that it's something that the court can do. It doesn't say anything about normal method. There may be appropriate situations for there to be an abatement. Of course, that's not what our judge did here. All right. Thank you, sir. We have your argument.